UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOAN GOODWINE and JOSEPH CARDILLO, | : : : |
| Plaintiffs, | : : : |
| v. | :   NO. 3:08CV532 (MRK) : |
| STATE OF CONNECTICUT DEPARTMENT OF CHILDREN AND FAMILIES, JEANETTE PEREZ, JEANNE GAVEY, BRYAN BENDIG, JOHN MATTERA and JOHN SULLIVAN, | : : : : : : |
| Defendants. | : |

## RULING AND ORDER

Joan Goodwine and Joseph Cardillo – a current and a former Instructional Assistant at the Connecticut Juvenile Training School ("CJTS"), respectively – have filed a six-count complaint against the State of Connecticut Department of Children and Families ("DCF") and five of its past and present employees, all of whom are sued in their personal capacities. *See* Second Am. Compl. (hereinafter, "Complaint") [doc. # 47]. Most of the claims allege violations of equal protection, due process, and/or Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.* Currently pending before the Court, however, is a motion filed on behalf of Ms. Goodwine alone, which seeks summary judgment as to liability only on Count Six. *See* Pl. Goodwine's Mot. for Partial Summ. J. ("Pl.'s Mot.") [doc. # 63]. That count is directed just to Defendant Bryan Bendig, a former teacher at CJTS, and alleges a common-law claim of assault and battery. *See* Compl. [doc. # 47] ¶¶ 69-71. Ms. Goodwine argues that there are no material facts in dispute regarding this claim, and that therefore she is entitled to judgment as a matter of law as to Mr. Bendig's liability on this claim. *See* Pl. Goodwine's Mem. in Supp. of Mot. for Partial

Summ. J. ("Pl.'s Mem.") [doc. # 63-4]. For the reasons that follow, the Court disagrees, and therefore Ms. Goodwine's Motion [doc. # 63] is DENIED.

## I.

The standard for considering a motion for summary judgment under Rule 56 of the *Federal Rules of Civil Procedure* is a familiar one, and will not be discussed here at length. On summary judgment, the role of the Court is not to weigh the evidence and resolve issues of fact; rather, the Court's limited role is to determine whether, based upon the undisputed facts, the moving party is entitled to judgment as a matter of law. If the Court finds that there are material facts that remain in genuine dispute, summary judgment is not appropriate, for the resolution of factual disputes is for the jury alone. Accordingly, Rule 56 advises that summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case" – here, the Connecticut common law on assault and battery – "will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

As the moving party, Ms. Goodwine bears the burden of demonstrating that no genuine dispute exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

Moreover, the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *See Anderson*, 477 U.S. at 255; *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). If the moving party carries its burden, the party opposing summary judgment "may not rely merely on allegations or denials," Fed. R. Civ. P. 56(e)(2), but must "set out specific facts showing a genuine issue for trial." *Id*. In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## II.

The facts as to Count Six of Ms. Goodwine's Complaint are mostly undisputed. The Court assumes the parties' familiarity with those facts, and will only set forth those necessary for resolution of Ms. Goodwine's present motion. Additional facts will be introduced as necessary.

As mentioned, Ms. Goodwine works as an Instructional Assistant at CJTS, a DCF-run school for juveniles who have been committed to the custody of the State for a variety of reasons. At all times relevant to this case, Mr. Bendig worked as a teacher at CJTS. The alleged battery occurred on December 22, 2006, in the teacher's lounge at CJTS. According to Ms. Goodwine, she was in the teacher's lounge at approximately 1:00 p.m. when Mr. Bendig entered the lounge, approached her from behind and, without warning, struck her on the forehead with his hand. *See* Goodwine Aff. [doc. # 63-1] ¶ 5. Ms. Goodwine alleges further that she had (and presumably still has) no idea what prompted this. Immediately after the alleged battery, Mr. Bendig proceeded to the restroom in the lounge, allegedly telling Ms. Goodwine that he was "going to kick [her] ass." *Id.* Ms. Goodwine, who says that she was "upset and shocked" by

3

what happened, apparently left the lounge before Mr. Bendig exited the restroom.

Ms. Goodwine went home for the day – which was the last day the school was in session until December 26 – approximately an hour and a half later. *See id.* Ms. Goodwine says that she began suffering headaches over the next few days, which she ascribes to the alleged battery. *See id.* ¶ 7. Ms. Goodwine reported the incident to her immediate supervisor, non-party Barbara Mule, at approximately noon on December 26. *See id.* Ms. Mule had actually been in the lounge at the time the incident in question occurred, though the record is unclear as to what she saw, if anything. Sometime shortly after Ms. Goodwine's complaint, Mr. Bendig was suspended from work for 30 days, including five days without pay. *See* Bendig Aff. [doc. # 76] ¶ 28. Ms. Goodwine says that this was not the first time that Mr. Bendig had "bull[ied]" her. *See* Goodwine Aff. [doc. # 63-1] ¶ 8. She says that on an unspecified number of occasions, Mr. Bendig called her the decidedly unflattering nickname of "Goodswine," and that on two occasions within one unspecified day, Mr. Bendig made comments to her to the effect that another teacher, Rhea Tompkins, either had or could beat up Ms. Goodwine. *See id.*

Although Mr. Bendig does not dispute the general substance of Ms. Goodwine's allegations, he describes the events in remarkably different terms. Mr. Bendig admits that he did make contact with Ms. Goodwine in the teacher's lounge, but describes it "as a light tap on the head and nothing more," employing "the same amount of force that [one] would use in patting a child on the head or . . . patting someone on the back or arm in a friendly manner." Bendig Aff. [doc. # 76] ¶ 19. As for Ms. Goodwine's contention that he threatened to "kick[] [her] ass," Mr. Bendig professes that he cannot recall whether he made such a comment or not, but says that he often uses (or used) similar phrases with friends in a joking or teasing manner. *See id.* ¶ 20. Indeed, Mr. Bendig says that prior to Ms. Goodwine's complaint to Ms. Mule, he considered Ms.

4

Goodwine to be a friend, as well as a colleague. *See id.* ¶ 21. In the same vein, Mr. Bendig admits to referring to Ms. Goodwine as "Goodswine" on no more than three occasions, but says that he meant the comment – which he readily acknowledges was made in poor judgment – as nothing more than friendly teasing between colleagues. *See id.* ¶ 13. Mr. Bendig similarly ascribes his comments about a fictional fight between Ms. Goodwine and Ms. Tompkins as immature and ill-advised workplace banter, but nothing more. *See id.* ¶¶ 14-16.

Approximately eleven months after the incident in question, Mr. Bendig's five-day unpaid suspension was arbitrated pursuant to procedures outlined in CJTS's agreement with the teacher's union. *See id.* ¶ 32. The arbitrator's decision, which Mr. Bendig submitted to the Court, concluded that Mr. Bendig's unpaid suspension was without just cause. *See* Arbitration Decision and Award [doc. # 76-1] at 14. Following an evidentiary hearing, the arbitrator concluded that:

> [T]here is absolutely no evidence to suggest that the incident involved any measure of "workplace violence." There is simply no indication of any violence; the physical contact appears to have been no more than incidental. Indeed, there is no evidence to believe that there was anything intimidating or threatening in the minor contact that occurred. . . . [Mr. Bendig's] account of the contact is credited, based particularly on the failure of the contact to attract the attention of the other two witnesses in the room or even for [Ms. Goodwine] to bring it to their attention at the time.

*Id.* at 11. While the arbitrator found that Mr. Bendig had exhibited poor judgment, he also said that "in examining the various elements of credibility, it appeared likely that [Ms. Goodwine] exaggerated the physical element of the incident." *Id.* at 12.

At some point in 2007, Ms. Goodwine filed suit in Connecticut Superior Court against Mr. Bendig, alleging assault and battery. *See id.* ¶ 33. She unilaterally withdrew that suit on or about June 6, 2007. *See* Notice of Withdrawal, *Goodwine v. Bendig*, No. MMX-CV-07-

5002132-S (Conn. Super. Ct. June 6, 2007) [doc. # 76-2]. She initiated this suit with the same allegations (among others) on April 10, 2008.

### III.

The Connecticut Supreme Court has advised that:

> An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.

*Alteiri v. Colasso*, 168 Conn. 329, 334 n.3 (1975) (quoting 1 Restatement (Second) Torts § 13 (1965)). The intent requirement in this context is not particularly stringent; it can be satisfied by a showing that the act was done "willfully and voluntarily, and therefore intentionally," recklessly, or even negligently. *Id.* at 332-33; *see also Stewart v. Kapustinski*, No. CV065001200, 2008 WL 802287, at *5 (Conn. Super. Ct. Feb. 25, 2008). Although the terms are often used in tandem, assault is typically distinguished from battery in that the former does not require any actual contact. Instead, an assault is defined as an act "intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact," provided that the act does put that person "in such imminent apprehension." *Simms v. Chaisson*, 277 Conn. 319, 331 (2006) (quoting 1 Restatement (Second) Torts § 21); *see also Stewart*, 2008 WL 802287, at *5 ("An assault is sometimes referred to as an inchoate battery. Assault does not require a touching, but merely a threat or gesture.") (citation omitted).

Ms. Goodwine argues that the undisputed evidence demonstrates that she has met the required elements of both assault and battery. The Court disagrees. Although there are other issues, the primary problem with granting summary judgment to Ms. Goodwine on either assault

or battery is one that she has not addressed in her brief: the effect of Conn. Gen. Stat. § 4-165.

By virtue of that statute, Mr. Bendig, as a state employee, enjoys immunity from personal liability due to injuries caused by acts he took "in the discharge of his . . . duties or within the scope of his . . . employment," so long as his actions were not "wanton, reckless, or malicious." Conn. Gen. Stat. § 4-165(a). "In other words, state employees may not be held personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319 (2003). This effectively raises the bar on what Ms. Goodwine must show as to Mr. Bendig's intent in making contact with her in the teacher's lounge, particularly since she has neither alleged nor argued that his actions were not "caused in the discharge of his . . . duties or within the scope of his . . . employment." Conn. Gen. Stat. § 4-165(a). In any event, whether the actions were caused or within the scope of Mr. Bendig's employment is a question of fact that a jury must resolve.[1]

The only evidence of Mr. Bendig's intent that Ms. Goodwine has submitted is his alleged threat to cause her physical harm; however, there are clearly factual disputes as to the nature in which Mr. Bendig made this comment, as the arbitrator's decision well illustrates. *See* Arbitration Decision and Award [doc. # 76-1] at 12-14. Therefore, Ms. Goodwine is not entitled to summary judgment on her claim of battery. *See Manifold v. Ragaglia*, 102 Conn. App. 315, 325 (2007) ("[T]o overcome the immunity provided under § 4-165, a plaintiff must produce facts

---

[1] Even if Ms. Goodwine had so argued, the Court would not have been inclined to grant summary judgment on that basis. Some amount of contact between coworkers is incidental to the duties of most employees, and Mr. Bendig has testified that the teacher's lounge is rather small, that he had to shuffle past Ms. Goodwine in tight quarters, and that he gave her no more than a friendly pat. *See* Bendig Aff. [doc. # 76] ¶¶ 18-19; *David v. Bureau*, No. CV075001460S, 2008 WL 4249406, at *6 (Conn. Super. Ct. Aug. 25, 2008) (granting a teacher's motion to dismiss various negligence counts brought against him by a student who alleged improper touching because the alleged acts were taken within the scope of the teacher's employment, but denying the motion to dismiss those counts alleging wanton, reckless, and/or malicious conduct).

from which a reasonable person could infer that the defendant acted with the requisite mental state of recklessness and malice."); *Doe v. Wilson*, No. 05CV482, 2010 WL 598920, at *3 (D. Conn. Feb. 18, 2010).

      The same is true with regard to the assault claim. While Ms. Goodwine's brief argues that this alleged threat "was quite sufficient . . . to cause a reasonable apprehension of future battery in Plaintiff Goodwine" that she did, indeed, suffer, *see* Pl.'s Mem. at 5, this is merely the unsworn hearsay statement of counsel, as Ms. Goodwine's affidavit makes no mention of any "apprehension of future battery," *see generally* Goodwine Aff. [doc. # 63-1], and Ms. Goodwine, as the moving party, is not entitled to such an inference at the summary judgment stage. Thus, she has not met her burden of proof on the assault claim, and is not entitled to summary judgment. In short, there are numerous factual issues regarding both the battery and assault claims that prevent the Court from granting Ms. Goodwine summary judgment.

## IV.

      For the foregoing reasons, Ms. Goodwine's Motion for Partial Summary Judgment [doc. # 63] as to liability on Count Six is DENIED.

                                   IT IS SO ORDERED.

                            /s/  <u>Mark R. Kravitz</u>
                                United States District Judge

**Dated at New Haven, Connecticut: June 1, 2010.**